**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**MARCH 9, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 38379-2-III |
| | ) | |
| SHAWN JASON GHARST, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | PUBLISHED OPINION |
| and | ) | |
| | ) | |
| ALLISON DIANE CONVERSE GHARST, | ) | |
| | ) | |
| Appellant. | ) | |

For the current opinion, go to https://www.lexisnexis.com/clients/warep

PENNELL, J. — The power to vacate a judgment under CR 60(b) is an equitable tool that enables courts "'to relieve the oppressed from the burden of judgments unfairly, fraudulently or mistakenly entered.'" 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2858, at 346 (3d ed. 2012) (quoting *Edwards v. Velvac, Inc.*, 19 F.R.D. 504, 507 (E.D. Wis. 1956)). A party may obtain CR 60(b) relief based on excusable neglect even if the party was not blameless in contributing to the need for relief. When a party files for CR 60(b) relief less than one year after entry of judgment, a court's equitable powers are especially strong.

Allison Converse filed a pro se motion for relief from judgment under CR 60(b) shortly after she failed to appear for her divorce trial. Ms. Converse attributed her nonappearance to a brain injury that was a result of a series of strokes. The trial court denied the CR 60(b) motion without reference to Ms. Converse's mental impairment,

instead relying on the court record that showed notice of trial had been sent to

Ms. Converse's mailing address. This was legal error. Because Ms. Converse filed her

motion less than one year after entry of judgment, CR 60(b)(1) obliged the trial court to

assess whether Ms. Converse's brain injury was an equitable circumstance excusing her

failure to appear, thereby warranting relief from judgment based on excusable neglect.

We reverse and remand for further proceedings.

## FACTS

In October 2020, Shawn Gharst petitioned for divorce from Allison Gharst, now

known as Allison Converse, after 12 years of marriage. The petition asserted Mr. Gharst

and Ms. Converse had already divided most of their property, that no spousal support was

necessary, and it was requested the court divide several items of debt equally among the

parties.[1] Mr. Gharst filed the petition with the assistance of legal counsel and the petition

was personally served on Ms. Converse.

The following month, Ms. Converse filed a pro se response to the petition. She

disagreed that the couple's personal property had been divided fairly. She also denied that

spousal support was unnecessary, explaining her only source of income was a monthly

---

[1] Mr. Gharst requested that one credit account totaling $6,912.50 and the mortgage for the family home be assignment to him. Mr. Gharst also requested the home be awarded to him in its entirety.

Social Security disability benefit she receives due to a "debilitating stroke" suffered five years prior to the divorce petition. Clerk's Papers (CP) at 21. At the end of the response, Ms. Converse listed a United States Postal Service box (PO Box) in Veradale, Washington, as the address at which she wished to receive "legal papers." *Id.* at 23.

In early February 2021, the court sent both parties a case schedule order, setting the trial date for June. The order indicated it was sent by mail to Ms. Converse at her PO Box in Veradale. In late April, the court sent the parties an amended case schedule order, with a new trial date of July 19, 2021. The order was again sent to Ms. Converse's PO Box in Veradale.

The superior court held a bench trial on July 19, 2021. Mr. Gharst appeared at trial with counsel but Ms. Converse did not appear. Trial proceeded in Ms. Converse's absence with Mr. Gharst as the only witness. During the trial, there was no discussion of Ms. Converse's stroke and related hardships. The trial court entered the final divorce order, declining to award spousal support and finding no transfer of personal property was required.

Less than one month later, Ms. Converse filed a pro se motion to vacate under CR 60(b). The motion included a statement of the case and grounds to vacate the order. The statement of the case explained that in 2015 Ms. Converse suffered from a series

3

of mini-strokes that ended in a serious stroke event leaving her with partial paralysis down the left side of her body and a brain injury that causes difficulties with speech, concentration, and the ability to organize her thoughts. It was further stated that stress and frustration exacerbate Ms. Converse's symptoms.

The statement of the case argued for relief under CR 60(b) for a variety of reasons, including:

- Ms. Converse's cognitive disability makes things challenging for her.

- Ms. Converse never received an official notification relating to the court date.

- Ms. Converse claims the only notice of the trial date came via e-mail from Mr. Gharst's attorney. However, Ms. Converse was unable to open the e-mail because she had password problems that she was unable to remedy due to her brain injury.

- Ms. Converse repeatedly attempted to contact Mr. Gharst regarding the court date.

- Mr. Gharst told Ms. Converse he would check with his attorney and let her know, but never did.

4

Ms. Converse submitted several declarations from friends and family members in support of her motion. The declarations stated Mr. Gharst had repeatedly assured Ms. Converse he would make sure she was taken care of during the divorce proceedings. Some of the declarations indicated Mr. Gharst advised Ms. Converse that her presence at trial would make no difference in the outcome. A theme in several of the declarations was that Mr. Gharst assured Ms. Converse she would not be left without anything from the marriage.

The trial court denied Ms. Converse's CR 60 motion, explaining "service [of the summons, petition for divorce, the court's automatic temporary order, and a case assignment notice and order] was made in person on 10/8/2020. Response [to the petition] was filed by [Ms. Converse] 11/17/2020 and she used a PO Box which all other court correspondence was mailed to." CP at 58.

Ms. Converse timely appeals the trial court's denial of her motion to vacate.

## ANALYSIS

CR 60(b) sets forth limited circumstances under which a trial court may grant a motion to relieve a party from a final judgment or order. We review a trial court's CR 60 decision for abuse of discretion. *Little v. King*, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). A trial court abuses its discretion only when its decision is manifestly unreasonable or is

based on untenable grounds or for untenable reasons. *In re Marriage of Tang*, 57 Wn.

App. 648, 653, 789 P.2d 118 (1990). A decision is based on untenable grounds if it is

based on the trial court's application of an incorrect legal standard. *Short v. Schrader*,

20 Wn. App. 2d 876, 880, 503 P.3d 580 (2022).

Under CR 60(b), there are 11 bases on which a litigant may be granted relief from

judgment. The first three bases must be made not more than one year after entry of

judgment. Relief under the other eight bases need be made only "within a reasonable

time." CR 60(b). Given this timing difference, the standards governing the first three

bases for relief should be interpreted as more forgiving than the following eight. *See*

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393, 113 S. Ct.

1489, 123 L. Ed. 2d 74 (1993).

Ms. Converse filed her CR 60(b) motion less than one month after entry of

judgment and cited CR 60(b)(1). She therefore was entitled to review under a more

generous standard than would have applied if she had petitioned for review more than

12 months after the judgment.

Under CR 60(b)(1), a party may move for relief from judgment based on

"[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a

6

judgment or order." Ms. Converse claimed her failure to appear for trial was due to excusable neglect.

The United States Supreme Court has addressed the meaning of excusable neglect in the context of the federal rules of civil procedure. According to the Court, excusable neglect does not require a showing of blamelessness. *See Pioneer Inv. Servs.*, 507 U.S. at 394. Instead, excusable neglect may apply when a party's actions are attributable to negligence. *Id.* Although the Court addressed excusable neglect under the federal rules, our courts have looked to the federal courts for guidance in interpreting CR 60, since our state rule is analogous to the federal rule. *Pybas v. Paolino*, 73 Wn. App. 393, 402, 869 P.2d 427 (1994). The United States Supreme Court's discussion of the excusable neglect standard is similar to one identified by the Washington Supreme Court in *Winstone v. Winstone*, wherein it was recognized that negligence or carelessness does not prevent a court in equity from discretion to relieve a litigant from an adverse judgment. 40 Wash. 272, 274, 82 P. 268 (1905).

Interpreting the United States Supreme Court's excusable neglect standard, the United States Court of Appeals for the Ninth Circuit has recognized that an unrepresented litigant's struggles with mental illness and lack of familiarity with the legal system can support a finding of excusable neglect. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d

691, 699 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001). Absent evidence of a deliberate attempt to manipulate the legal system, a party unfamiliar with the legal system who fails to respond during a time of "extreme personal difficulty" should not be considered culpable for purposes of the excusable neglect standard. *Id.*[2] The Ninth Circuit's observations are consistent with our own case law, which holds that a pro se litigant who also suffers from a significant mental disability should not be held to the same standard as an attorney. *Carver v. State*, 147 Wn. App. 567, 575, 197 P.3d 678 (2008).

Relief from judgment based on excusable neglect requires not only an analysis of a litigant's mental state, but also other circumstances including "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, [and] the reason for the delay, including whether it was within the reasonable control of the movant." *Pioneer Inv. Servs.*, 507 U.S. at 395. To prevail on a motion to vacate based on excusable neglect, the record must reflect a prima facie defense

---

[2] Mr. Gharst appears to claim that Ms. Converse is precluded from arguing her disability as an extenuating circumstance because she did not seek an accommodation under GR 33. Mr. Gharst fails to cite any authority in support of this claim. It therefore does not warrant additional review. RAP 10.3(a)(6).

8

to the claim on trial. *Sollenberger v. Cranwell*, 26 Wn. App. 783, 785-86, 614 P.2d 234 (1980).

Ms. Converse has made a plausible claim for relief from judgment under the foregoing standards. Most significantly, Ms. Converse has alleged the requisite kind of mental state that would qualify for relief from judgment based on excusable neglect. According to Ms. Converse, she did not purposefully fail to appear at trial. Instead, she explains that her thinking was clouded due to the effects of the strokes she had suffered. According to Ms. Converse, her strokes caused a brain injury and related difficulties in speaking, concentrating, and organized thinking. Mr. Gharst does not dispute that Ms. Converse suffers from a disability. Indeed, the record reflects Ms. Converse's sole source of income comes from a Social Security disability benefit.[3]

---

[3] Mr. Gharst complains that Ms. Converse's motion was not supported by competent evidence because it was "based solely on a [d]eclaration by Mr. Greg Sporn." Br. of Resp't at 3. This claim was not raised before the trial court. It is therefore waived. RAP 2.5(a). Furthermore, Mr. Gharst's hearsay complaint is inaccurate. Ms. Converse submitted several declarations in support of her motion, not just the declaration by Mr. Sporn. While Mr. Sporn's declaration contained some hearsay, it largely conveyed statements made by Mr. Gharst, which are not hearsay. ER 801(d)(2). It could be that Mr. Gharst is complaining about the fact that Mr. Sporn transcribed Ms. Converse's CR 60 motion. However, the motion was not a declaration. It was sworn to by Ms. Converse, not Mr. Sporn. Mr. Gharst fails to explain how Mr. Sporn's act of transcribing Ms. Converse's words for submission as a CR 60 motion constituted a hearsay declaration.

The remaining factors also plausibly weigh in Ms. Converse's favor. Ms. Converse filed her CR 60(b) motion less than one month after entry of judgment. Mr. Gharst has not identified he would suffer any prejudice from retrial. At the same time, the outcome of trial might have been different with Ms. Converse's participation, given the trial court granted all Mr. Gharst's requests and did not consider Ms. Converse's disability and inability to work when dividing debt and liabilities and denying spousal maintenance.

The trial court here denied Ms. Converse's motion to vacate based solely on the fact that Ms. Converse had been provided notice of the trial date. This fails to reflect the correct legal standard. If Ms. Converse had not had been notified of the trial date, she would have been blameless in failing to appear. But blamelessness is not what is required to establish excusable neglect under CR 60(b)(1). Because the trial court relied on an incorrect legal standard in assessing Ms. Converse's CR 60 motion, it abused its discretion. We remand so that the trial court may consider Ms. Converse's motion pursuant to the factors set forth in this decision.

## ATTORNEY FEES

Ms. Converse requests this court award her attorney fees on appeal, pursuant to RAP 18.1 and RCW 26.09.140. She argues that she has the financial need and Mr. Gharst has the ability to pay. According to Ms. Converse's RAP 18.1(c) financial

declaration, she has not worked since 2014 and her total monthly expenses greatly exceed her limited income.

Under RCW 26.09.140, this court has the discretion to award attorney fees to the prevailing party in a family law case after considering the financial resources of both parties. A party relying on RCW 26.09.140 "must make a showing of need and of the other's ability to pay fees in order to prevail." *Kirshenbaum v. Kirshenbaum*, 84 Wn. App. 798, 808, 929 P.2d 1204 (1997). We grant Ms. Converse's request for reasonable attorney fees, subject to her compliance with RAP 18.1(d).

## CONCLUSION

This matter is reversed and remanded for further proceedings.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.

11